IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JENNIFER CROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:24-cv-4092 |
| | ) | |
| CITY OF TOPEKA, KANSAS, | ) | |
| | ) | **JURY TRIAL REQUESTED** |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Captain Jennifer Cross ("Cross") alleges the following against Defendant City of Topeka, Kansas:

## PARTIES

1.      Plaintiff is a female police officer employed by Defendant and a resident of Kansas.

2.      Defendant is a municipality in Kansas and an employer within the meaning of Title VII of the 1964 Civil Rights Act, 42 U.S.C. Section 2000e, *et seq*., ("Title VII").

3.       All the acts, conduct and omissions of Defendant were performed by its agents, representatives and employees while in the course and scope of their agency or employment.

4.       Defendant is responsible for the supervision, management, and control of the TPD, through which Defendant fulfills its policing functions.

## JURISDICTION AND VENUE

1.      This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the acts complained of involve violations of Plaintiff's rights under federal law, specifically Title VII and 42 U.S.C. Section 1983.

2.     Venue is proper within this District because the events giving rise to Plaintiff's claims occurred in this District, the unlawful employment practices are alleged to have been committed in this District, and the Defendant has sufficient minimum contacts with this District to be considered residents of the State of Kansas for the purposes of the federal jurisdiction and venue statutes.

**FACTUAL ALLEGATIONS**

3.     Cross started her employment with Defendants as a police officer on March 29, 2004.

4.     Cross currently serves as a Captain in the police department.

5.     As a form of background information, Cross filed a charge of discrimination with the EEOC against the Defendant, received a right to sue letter and filed a complaint in federal court charging the Defendant and Chief Wheeles with gender discrimination, hostile work environment and retaliation on January 18, 2023.  That action is still pending in court and is styled Colleen Stuart, et. al. vs. City of Topeka, KS., et. al., Case Number 23-CV-2021-JWB.

6.     Plaintiff has engaged in protected activity asserting her statutory and constitutional rights against gender discrimination.

7.     After depositions had been taken in the above referenced case, including the depositions of Police Chief, Bryan Wheeles, and Deputy Chief, Jamey Haltom, on November 9, 2023, Cross was notified by Alicia Guerrero-Chavez , an investigator in the legal department of the City of Topeka, that Cross was the subject of an investigation related to allegations of work place bullying against Lt. Kelly Connell.

8.     The alleged bullying was related to expectations that had been set by Cross as LT Connell's direct supervisor and that she claimed were unattainable. Her complaint was filed just

after she was placed on a performance improvement plan on October 23, 2023.  Prior to Cross'

decision to place Lt. Connell on a performance improvement plan and doing a special

evaluation of her performance, Cross had in-person meetings with Cross' chain of command,

Major Russ Klumpp, Deputy Chief, Jamie Haltom, as well as Police Chief, Bryan Wheeles and

Human Resources Interim Director, Shawn Maisberger, regarding the issues Cross was having

with Lt. Connell's performance and Cross' request to issue Lt. Connell these documents.

Klumpp, Haltom and Wheeles reviewed and signed off on the issuance of the Performance

Improvement Plan and Special Evaluation.  Shawn Maisberger, as the interim human resources

Director reviewed both documents and approved of their issuance.  This all occurred before the

documents were given to Lt. Connell.

9.     Upon Cross being notified of Lt. Connell's complaint against Cross, Cross

prepared to cooperate fully, including attending, and giving information in an investigative

meeting with Ms. Guerrero-Chavez.  As allowed in the past with other employees, Cross

requested to have a representative present and to have the interview recorded.  Ms. Guerrero-

Chavez denied Cross' request to record the meeting, even though there is no policy against it

and other individuals who participated in the investigative process of this very complaint were

afforded the right to have a representative present and record the interview.

10.    There was an initial meeting scheduled by Ms. Guerrero-Chavez for November

15, 2023, that Cross did attend alone as Cross' attorney was unavailable and Ms. Guerrero-

Chavez had not confirmed timely that the meeting was called off.  When Cross attended Ms.

Guerrero-Chavez Cross told Ms. Guerrero-Chavez that Jacque Russell, HR Director had

informed Cross it was not against policy for her to record the session, Ms. Guerrero-Chevez

became irritated and appeared annoyed.

11.     Cross observed Ms. Guerrero-Chavez's demeanor and conduct that was short, annoyed, uninterested in the initial meeting on November 15th demonstrating her being biased causing Cross to be concerned that Ms. Guerrero-Chavez would not conduct an impartial and fair investigation.

12.      Ultimately, Cross did attend an interview with her counsel present and, was denied her request to record the session.

13.     During the interview, extensive documentation related to the ongoing performance issues with LT Connell was provided.

14.     Cross cooperated fully, answered all Guerrero-Chavez's questions, provided full and complete answers in which it was clear that no wrong-doing or violation had occurred.  Ms. Guerrero-Chavez closed the meeting indicating that she would be completing the investigation within 30 days, or she would contact Cross to inform Cross that it would be extended.

15.     On December 8th, Cross was notified that the investigation was not concluded. Cross requested an updated date of completion. Ms. Guerrero-Chavez did not respond to this question. Several days later, Cross followed up with Ernesto De La Rosa, who Cross believed was Ms. Guerrero-Chavez's boss.  He replied that Ms. Guerrero-Chavez was the one who could answer that, at which time, she replied that she had been too busy to "circle back" and stated she did not have any idea of a timeline for conclusion. There was no further communication from her until January 25th when she said the investigation would conclude no later than February 2, 2024.

16.     On January 30, 2024, Cross was provided Ms. Guerrero-Chavez's findings that Cross had violated Section 3.14 C 2d of City Personnel Manual as well as 4.9.3 P1 and P2 of TPD Policy. There was no specific and substantive information provided to Cross that would

4

allow Cross to understand what the action was that was deemed inproper nor what was deemed unprofessional about any comment(s) that Cross had made to Lt. Connell.

17.     Cross was then contacted by MAJ Klumpp for a formal coaching session due to these findings.

18.     Cross grieved the findings and per the policy it was presented to Cross' chain of command for review a response.  MAJ Klumpp's opinion, when presented with the grievance, was that Cross' concerns were worthy of consideration. DC Haltom indicated that he was not involved and therefore could not overturn the decision. Chief Wheeles indicated that he concurred with the report and investigation. Once the grievance made it to HR, Cross was finally provided a copy of the full summary report.

19.     The entirety of this investigation, including selection of witnesses, duration of the investigation, lack of communication, and inconsistent treatment of involved parties indicate that the investigation was retaliatory in nature and was conducted in a way to ensure a certain outcome of a finding against me.

20.     According to the investigative timeline, Ms. Guerrero-Chavez provided immediate feedback to LT Connell's request for legal representation to be present. This same request on Cross' part took multiple days in which to respond, as well as required consultation with City Attorney and Chief of Litigation.

21.     The timeline also indicated that despite receiving the complaint on November 9th, it was January 11th before any interviews besides Cross or LT Connell were conducted. Further, Ms. Guerrero-Chavez indicates that the three seargents interviewed were "selected at random" and yet consisted only of those who reported directly to LT Connell, or who had a previous issue with Cross' leadership. Similarly, there is no explanation as to why LT Munoz was

interviewed, having not supervised LT Connell for almost two years. These selections for investigation consider only those in subordinate positions to Cross, and do not account for anyone at the same rank, who can speak to the reasonableness of my expectations, it did not consider the statements of any peers to LT Connell who could speak to their understanding of expectations or the reasonableness of expectations, nor did the selection of those interviewed consider anyone above Cross' rank, who also could have confirmed the reasonableness of Cross' expectations, including MAJ Klumpp, DC Haltom and Chief Wheeles, all of whom had reviewed and approved of the performance improvement plan and special evaluation about which Lt. Connell was complaining.  Likewise, no one else who recently supervised LT Connell was interviewed. Only individuals who could allegedly provide some support for LT Connell, or her claims, were interviewed.

22.     Similarly, despite Ms. Guerrero-Chavez's contention that the investigative timeline was delayed by her "thorough" review of submitted documentation by both Cross and LT Connell, only documentation provided by LT Connell was attached to or referenced in the report. This was despite that the documentation Cross submitted contained email documentation that directly negated claims made by both LT Connell and LT Munoz.

23.     There are emails included with the packet provided to Ms. Guerrero-Chavez in which the Blue Team expectations are clearly outlined, as well as within the 520 plan itself, and in neither of these locations does the language or expectation support LT Connell's claims that Cross set an expectation for review by the end of shift. That statement asserted by LT Connell was false and had been corrected and addressed in writing on more than one occasion. LT Connell also asserted that despite meeting with her and agreeing to changes in her evaluation presented on October 23, 2022, Cross never made the agreed upon changes. LT Connell

submitted documentation of her initial evaluation, as well as the hand-made changes from the meeting. LT Connell failed to submit the evaluation provided to her via email on 10/24/2023 containing all the discussed changes. Ms. Guerrero-Chavez also included both copies of the evaluation as supporting evidence in her report, but failed to include the amended evaluation, and did not bother to confirm with HR that the amended version was, in fact, the one in the Compass evaluation system.

24.     Further LT Munoz's statements that LT Connell only had one issue as the quartermaster, that was not uncovered until after she was promoted to LT in April of 2022, are negated by more than one email chain that was provided to Ms. Guerrero-Chavez dating back as far as September 2021 where LT Connell made numerous mistakes, that escalated in severity until the culmination in June of 2022, when we were graduating an entire class, none of whom had uniforms due to LT Connell's (then SGT) failure to order them.

25.     The further false claim that LT Munoz stated Cross came to him demanding LT Connell be written up, is negated by a June 2022 email sent to MAJ Purney, which Cross provided him the documentation that the problem was ongoing, and LT Munoz had been keenly aware of it, well before her promotion, and that he had chosen to let it go unaddressed. Cross also provided text messages to Ms. Guerrero-Chavez from February of 2022 (prior to LT Connell's promotion) that Cross communicated missing items and errors to LT Munoz who responded back that she was "starting to piss" him off due to the repeated mistakes. Again, in direct rebuttal to his claims regarding LT. Connell's exemplary work product and his lack of knowledge about any other incidents. He further claimed Cross told him that Cross was only promoted because of the lawsuit filed, despite his assertion that this conversation occurred in

conjunction with Cross' demand for LT Connell to be written up, which occurred in June of 2022, six full months before litigation was filed in January 2023.

26.     The extended duration of this investigation, coupled with the fall out created from only interviewing subordinate employees, as well as errant substantiation and Cross' apparent lack of authority to enforce our policies, has created a hostile work environment and an inability for Cross to do her job on a daily basis.

27.     As a result, there were multiple communications between Cross, CPT Jones and MAJ Klumpp regarding the difficulties being created by the supervisory disconnect, as well as the rumors circulating and the way Cross was addressed on multiple occasions. Cross also communicated to MAJ Klumpp her concerns that she was incapable of completing her job without further clarification, because she was acting directly in accordance with policy, but was being told her conduct was inappropriate.

28.     The actions of Guerrero-Chavez, Connell, and Munoz violate several personnel codes as well as TPD Policies.

29.     It is Cross' belief that LT Kerry Connell and LT Manny Munoz provided false statements and claims within the course of this investigation in which they would have known that their false statement would ensure the grievance against Cross would be substantiated. Not only does this violate City Personnel Code, but it raises veracity concerns from Police Commanders who would provide false information in an official investigation.

30.     In addition, DC Haltom and Chief Wheeles decided to actively step-aside and not review this information. In fact all the information clearly shows that Cross did not violate policy nor bully Lt. Connell. This inaction on their part, which is intentionally blind to the facts that were presented to them and which they personally reviewed and approved; the fact that

Chief Wheeles was a defendant in a case in which Cross was one of the plaintiffs claiming he discriminated against Cross; and the fact that his deputy chief was called to give a deposition in which his actions were brought into question, clearly raises the issue of Cross being treated differently and being retaliated against for Cross' lawsuit against the City of Topeka and Chief Wheeles, individually.

31.    Cross has not been supported by her chain of command unlike their support and involvement in male officers' PSU investigations.

32.    Male officers who receive discipline findings by the human resource department do not receive actual discipline action and historically don't even know that a finding has been made against them.

33.    The system has been and continues to be that the human resource department does not have the authority to discipline police commissioned officers nor ensure that discipline has been given to the officers who had findings against them.

34.    Women officers in the Defendant's police department are treated negataively in such a way that is discriminatory and creates a hostile work enviromemnt.  Exhamples of this fact are as follows:

a)  Women have been denied promotions to men who were less qualified.

b)  Women's authority have been circumvented in the chain of command.

c)  Women are interrupted and ignored in meetings.

d)  Women have not been allowed to serve on the Response Team, even though they have applied and are qualified.

e)  There is a different standard of what male officers can post on social media verses what females can post.

f) When issues of insubordination are brought to the attention of a female officer's chain of command, there is no support as opposed as to male officers bringing complaints to the command staff.

g) When Jana Kazzar was promoted to Major and Jennifer Cross was promoted to Captain, Bryan Wheeles, Chief of Police showed his anger and discriminatory animus by declining to show Kazzar and Cross the TPD's customary celebration of their promotion by refusing, at the promotion ceremony, to: 1) outline and celebrate their stellar career to that point; and, 2) refusing to take celebratory pictures with Kazzar, Cross and and their families and friends.

h) Women are told that they have to have a masters degree to be promotable while male officers do not have the same requirement.

i) Women officers were told they could not work on their school work during their work hours even though male officers were allowed to do so.

35.    Women officers, including but not limited to Jennifer Cross, Colleen Stuart and Jana Kizzar were subjected to hearing sexist comments from various male members of the TPD, throughout the duration of her career including:

a) "People are watching you more because you are a woman, so don't let it show"; "You have a resting bitch face"; Many times hearing male officers talk about which female officers they would have sex with, ranking them, which ones they thought were lesbians and which ones were "easy"; "You don't look like a cop your look like a librarian"; "Women in this field are either whores or lesbians so you have to work hard to avoid these titles"; "You do a great job for a girl in this profession"; "It's not

fair, but you will always have to work harder to prove yourself because you are female"; "It's not fair that you have to work twice as hard, but you're just as good".

36.    Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission within 300 days of the acts complained of and filed this Complaint within 90 days after the date the Right to Sue letter was written.  This action is timely, and Cross has exhausted all administrative prerequisites to filing this action.  A copy of her Right to Sue letter is attached as Exhibit A.

### Count I – Hostile Work Environment in Violation of Title VII
### Against Defendant

37.    Plaintiff incorporates by reference all allegations of this Complaint as if set forth fully herein.

38.    As a female, Plaintiff is a member of protected groups within the meaning of Title VII.

39.    Plaintiff was subjected to unwelcome harassment and discrimination based on sex and retaliation for her complaints of discrimination as described herein.

40.    Plaintiff's sex and complaints of discrimination motivated the harassment and/or discrimination alleged herein.

41.     Defendant subjected Plaintiff to discrimination on a continuous and/or ongoing basis.

42.    The discrimination to which Plaintiff was subjected affected the terms, conditions, and/or privileges of Plaintiff's employment.

43.    The discrimination, harassment, and/or retaliation to which Plaintiff was subjected created a hostile work environment.

44.     The discrimination, harassment, and/or hostile work environment substantially interfered with Plaintiff's work performance.

45.     Defendant knew or should have known of the discrimination, harassment, and/or the hostile work environment to which Plaintiff was subjected.

46.     Defendant failed to implement prompt and effective remedial action to end the discrimination, harassment, and/or the hostile work environment to which Plaintiff was subjected when Defendant knew or should have known of the discrimination, harassment, and/or the hostile work environment.

47.   Defendant's actions and/or inactions constitute unlawful employment discrimination against Plaintiff in violation of Title VII.

48.     Defendant's actions and/or inactions occurred by and/or through its agents, servants, and/or employees acting within the course and scope of their employment.

49.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages including past lost wages; a  detrimental job record; career damage and diminished career potential; garden-variety mental and emotional distress in the form of embarrassment,  degradation, humiliation, anxiety, loss   of enjoyment of life, and loss of sleep; pain and suffering; and other non-pecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

50.     Defendant's conduct was intentional, malicious, and/or outrageous and evidenced an evil motive, complete indifference to, or conscious disregard for, the rights of Plaintiff and others similarly situated, thereby entitling Plaintiff to an award of punitive damages.

51.   Plaintiff is entitled to recover all costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

WHEREFORE, Plaintiff prays for Judgment against Defendant, finding the acts and practices of the Defendant violated Title VII ; for actual, compensatory, and punitive damages; all costs, expenses, expert witness fees, and attorneys' fees incurred herein; prejudgment and post-judgment interest at the highest lawful rate; appropriate equitable relief including, but not limited to, requiring Defendant to place Plaintiff in the same position she would have been absent the illegal discrimination; and for such other relief as the Court deems just and proper.

**Count II – Violation of 42 U.S.C. Section 1983 Against Defendant Topeka**

52.     Plaintiff incorporates by reference each of the paragraphs set forth above as though fully set forth herein.

53.     By engaging in the above-described conduct, Defendant Topeka, acting under color of state law, deprived Plaintiff of equal protection under the law, as guaranteed by the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. Section 1983, because of her sex/gender.

54.     Defendant Topeka/TPD's illegal discrimination against female employees and/or its disparate treatment of female employees was a policy, custom or practice of Defendant Topeka/TPD such that it is liable for the acts/omissions of Defendant Topeka's agents and employees.

55.     As a direct and proximate cause of Defendant Topeka's violation of the Constitution, Plaintiff has incurred and will continue to incur damages, including but not limited to past and future lost wages and benefits, and emotional distress.

56.     Defendant Topeka and its agents acted with malice towards Plaintiff or was recklessly indifferent to her federally protected rights such that she is entitled to punitive damages.

13

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant Topeka, for a finding that she has been subjected to unlawful discrimination as prohibited by Section 1983; for an award of compensatory and punitive damages, for her costs expended, for their reasonable attorneys' fees, for equitable relief, and for such other and further relief as this Court deems just, proper and equitable.

### COUNT III - Retaliation in Violation of Title VII Against Defendant

57.     Cross restates and incorporates by reference all preceding paragraphs of this complaint.

58.     Plaintiff engaged in "protected opposition" to unlawful employment practices of Defendant.

59.     Defendant knew Plaintiff had engaged in protective activity as she had filed a lawsuit against Defendant for gender discrimination and hostile work environment in which Defendant has engaged in defending.

60.     Plaintiff's protected opposition included formal complaints to Defendant's human resource department.

61.     Defendant retaliated against Plaintiff.

62.     As a direct and proximate result of Defendant's conduct, Cross has, and will continue to sustain damages in the form of garden-variety emotional pain and punitive damages.

63.     Defendant and its agents acted with malice towards Plaintiff or was recklessly indifferent to her federally protected rights such that she is entitled to punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant for an award of compensatory and punitive damages, for her costs expended, for their reasonable attorneys'

fees, for equitable relief, and for such other and further relief as this Court deems just, proper and equitable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Topeka, Kansas as the trial site for this case.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable in this Complaint.

Respectfully submitted,

**EMPLOYEE RIGHTS LAW FIRM**
**LAW OFFICE OF MARK A. JESS**

_____/s/ Christie Jess_____
Mark A. Jess, MO #37946
Christie Jess, MO #44919
4 E. Franklin Street
Liberty, MO 64068
816-474-4600
816-474-4601 Facsimile
Email:  mark.jess@employeerightslawfirm.com
          christie.jess@employeerightslawfirm.com

**ATTORNEYS FOR PLAINTIFF**