IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JENNIFER CROSS, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | |
| v. ) | No. 24-4092-KHV |
| ) | |
| CITY OF TOPEKA, KANSAS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

On September 13, 2024, Jennifer Cross filed suit against her employer, the City of Topeka, Kansas, alleging that in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Fourteenth Amendment to the Constitution of the United States with 42 U.S.C. § 1983, defendant subjected her to a hostile work environment (Count I), disparate treatment on the basis of sex (Count II) and retaliation (Count III). See Complaint (Doc. #2) filed September 13, 2024. On June 11, 2025, the Court sustained defendant's motion to dismiss Counts I and II, because plaintiff had already litigated those claims in a previous action, Stuart et al. v. City of Topeka et al., No. 23-2021-JWB, 2024 WL 3741405 (D. Kan. Aug. 9, 2024). See Order (Doc. #30). On July 21, 2025, plaintiff filed her Second Amended Complaint (Doc. #34) alleging retaliation in violation of Title VII. This matter is before the Court on defendant's Motion To Dismiss Plaintiff's Second Amended Complaint (Doc. #35) filed August 11, 2025. For reasons stated below, the Court overrules defendant's motion.

**Legal Standards**

Defendant asks the Court to dismiss plaintiff's amended complaint under Rule 8 or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

To state a claim for relief, Rule 8(a)(2), Fed. R. Civ. P., requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Additionally, each allegation must be "simple, concise, and direct." Fed. R. Civ. P 8(d)(1). Rule 8 establishes a floor and a ceiling: "It is sufficient, and indeed all that is permissible, if the complaint concisely states facts upon which relief can be granted upon any legally sustainable basis." Frazier v. Ortiz, No. 06-1286, 2007 WL 10765, at *2 (10th Cir. Jan. 3, 2007)(citations omitted). This rule "serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." Mann v. Boatright, 477 F.3d 1140, 1148 (10th Cir. 2007). If the complaint fails to comply with Rule 8, the Court may dismiss the action with or without prejudice under Rule 41(b), Fed. R. Civ. P. Fontana v. Pearson, 772 F. App'x 728, 729 (10th Cir. 2019). The Court can do so sua sponte or on defendant's motion to dismiss. Id.

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019). Plaintiff bears the burden of framing her claims with enough factual matter to suggest that she is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim by pleading factual

content from which the Court can reasonably infer that defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

Plaintiff's second amended complaint alleges as follows:

On March 29, 2004, Jennifer Cross started her employment as a police officer with the City of Topeka, Kansas. Cross currently serves as a Captain in the police department. On January 18, 2023, Capt. Cross filed a complaint in federal court charging the City of Topeka and Police Chief Brian Wheeles with gender discrimination, hostile work environment and retaliation. In that action, the Court dismissed her claims on summary judgment, but other plaintiffs survived summary judgment and prevailed at trial. That action is pending in the Tenth Circuit Court of Appeals and is styled Colleen Stuart et al. vs. City of Topeka, KS. et al., Appeal Number 25-3090.

The Topeka Police Department ("TPD") promoted Cross to Captain after she filed her

lawsuit.[1] When it did so, Chief Wheeles showed anger by making statements that he was "forced to make the promotion." Chief Wheeles offered Capt. Cross the promotion by asking her to come to his office and giving her a sealed envelope, then instructing her to leave and open it elsewhere. Capt. Cross clearly saw his lack of enthusiasm or interest in her promotion. At his deposition in the prior lawsuit, Chief Wheeles testified that he had never offered a promotion to any officer in this manner. Capt. Cross opened the envelope in her office, then returned to Chief Wheeles' office and overheard him tell her Major, "It wasn't my choice." Second Amended Complaint (Doc. #34), ¶ 14. During Capt. Cross' promotional ceremony, Chief Wheeles declined to show the customary celebration. Specifically, he did not (1) make a statement on Capt. Cross' career or mention an accomplishment of her career; (2) recognize or honor the contributions from Capt. Cross' family; or (3) take celebratory pictures with Capt. Cross and her family and friends. Capt. Cross' daughter noticed and commented on the differences in that ceremony, compared to her father's promotional ceremony to Major. In her father's promotional ceremony, Chief Wheeles actively participated, took pictures, made glowing remarks about him and mentioned the contributions from his family (actions which he has performed in all promotional ceremonies of individuals who did not have lawsuits pending against him). By failing to celebrate in the traditional manner, Chief Wheeles communicated to the TPD that Capt. Cross' promotion was not earned or recognized.

Once promoted, Capt. Cross was not satisfied with the performance of one of her direct reports, Lt. Kelly Connell. Capt. Cross met with her superiors, Major Russell Klumpp, Deputy

---

[1] Plaintiff does not specify the date for many of the facts alleged. Dates are included where available.

Chief Jamey Haltom, Chief Wheeles and Human Resources ("HR") Interim Director, S. M.[2], regarding these issues and asked to put Lt. Connell on a Performance Improvement Plan ("PIP") and special evaluation. They all approved the PIP and special evaluation and on October 23, 2023, placed Lt. Connell on a PIP.

In Capt. Cross' lawsuit, the parties took depositions of Chief Wheeles and Deputy Chief Haltom. On November 9, 2023, after those depositions, Alicia Guerrero-Chavez, an investigator in the legal department of the City of Topeka, notified Capt. Cross that she was the subject of an investigation related to allegations of workplace bullying against Lt. Connell. The alleged bullying was related to expectations that Capt. Cross set as Lt. Connell's direct supervisor which Lt. Connell claimed were unattainable.

Capt. Cross prepared to cooperate fully and met with Guerrero-Chavez. Capt. Cross asked to have a representative present and to record the interview, as TPD had allowed for other employees. Guerrero-Chavez denied Capt. Cross' request to record the meeting, even though no policy prohibits recording and Guerrero-Chavez had allowed others to record their interviews. These others, however, did not have lawsuits pending against the City of Topeka. On November 15, 2023, although her attorney was unavailable, Capt. Cross had her first meeting with Guerrero-Chavez. She told Guerrero-Chavez that J.R., the HR Director, had informed her that recording the session was not against policy. Guerrero-Chavez then became irritated and appeared

---

[2] The Second Amended Complaint (Doc. #34) refers to several individuals with only their initials and their identity cannot otherwise be ascertained. Plaintiff did not file an unredacted version of her second amended complaint. Under Local Rule, 5.4.2, a party seeking to file a document in the public record with redactions "must file a motion to seal or redact in the public record . . . within 7 days after the document is filed provisionally under seal." D. Kan. Rule 5.4.2(c). To avoid injustice, the Court will consider plaintiff's complaint despite the improper redactions, see D. Kan. Rule 1.1(b)(2), but cautions plaintiff against further violations of local court rules.

annoyed. Capt. Cross observed that in the initial meeting, Guerrero-Chavez's demeanor and conduct was short, annoyed and uninterested and demonstrated bias against Capt. Cross. Understandably, this caused Capt. Cross to be concerned that Guerrero-Chavez would not conduct an impartial and fair investigation. Capt. Cross attended an interview with her legal counsel present and, again, TPD denied her request to record the session even though City and TPD policy does not prohibit recording.

During the interview, Capt. Cross provided extensive documentation related to ongoing performance issues with Lt. Connell. Capt. Cross cooperated fully, answered all of Guerrero-Chavez's questions and provided full and complete answers clearly showing that no wrong doing or violation had occurred. After the meeting, Guerrero-Chavez indicated that she would complete the investigation within 30 days or would contact Capt. Cross to inform her that it would be extended.

On December 8, 2023, Capt. Cross learned that Guerrero-Chavez still had not concluded the investigation. Capt. Cross requested an updated date of completion. Guerrero-Chavez did not respond to this request. Several days later, Capt. Cross followed up with E. D. L. R., who Capt. Cross believed was Guerrero-Chavez's boss. He replied that Guerrero-Chavez was the one who could answer her question. Guerrero-Chavez replied that she had been too busy to "circle back" and stated that she did not have any idea of a timeline for conclusion. On January 25, 2024, Guerrero-Chavez updated Capt. Cross that she would conclude the investigation no later than February 2, 2024.

On January 30, 2024, Guerrero-Chavez provided Capt. Cross with her findings that Capt. Cross, in her supervision of Lt. Connell, had violated Section 3.14 C 2d of City Personnel Manual as well as 4.9.3 P1 and P2 of TPD Policy. The information provided contained no specific or

substantive details to allow Capt. Cross to understand what action Guerrero-Chavez deemed improper, or what Guerrero-Chavez deemed unprofessional about any comments that Capt. Cross made to Lt. Connell.  Due to Guerrero-Chavez's findings, Major Klumpp, Capt. Cross' supervisor, contacted Capt. Cross for a formal coaching session.

Capt. Cross grieved Guerrero-Chavez's findings to her chain of command for review. Major Klumpp believed that Capt. Cross' concerns were worthy of consideration.  Deputy Chief Haltom indicated that he was not involved and therefore could not overturn the decision.  His statement was incorrect, however, because no policy prohibited him from altering or weighing in on a decision when he was not involved in the investigation.  During Deputy Chief Haltom's deposition in Capt. Cross' prior litigation, plaintiff's attorney questioned his actions and motivations.  At his deposition, Deputy Chief Haltom made a statement about Capt. Cross' character that was not relevant and was meant to embarrass and harass her.  He was clearly angry that plaintiff's attorney had scrutinized his motives and actions.  Chief Wheeles indicated that he concurred with the report and investigation.  Capt. Cross' prior litigation named Chief Wheeles as a defendant, and he was noticeably angry during his trial testimony concerning his actions and motivation.

Once the grievance made it to HR, TPD provided Capt. Cross a copy of the full summary report.  The entirety of the investigation, including selection of witnesses, duration of the investigation, lack of communication and inconsistent treatment of involved parties indicated that the investigation was retaliatory in nature and that TPD had conducted it in a way to ensure a finding against Capt. Cross.  According to the investigative timeline, Guerrero-Chavez had provided immediate feedback to Lt. Connell's request for legal representation to be present. Guerrero-Chavez took multiple days to respond to the same request from Capt. Cross and in doing

so, she consulted with the City Attorney and the Chief of Litigation. The timeline also indicated that despite receiving the complaint on November 9, 2023, HR did not conduct any interviews besides Capt. Cross or Lt. Connell until January 11, 2024. Further, Guerrero-Chavez indicated that she selected at random the three sergeants to interview, yet they consisted only of those who reported directly to Lt. Connell, or who had a previous issue with Capt. Cross' leadership. Similarly, Guerrero-Chavez cannot explain why she interviewed Lt. M., as he or she had not supervised Lt. Connell for almost two years. These investigation selections considered only those in subordinate positions to Capt. Cross and did not account for anyone at the same rank, who could have spoken to the reasonableness of Capt. Cross' expectations of Lt. Connell. Moreover, the witnesses did not consider the statements of any peers of Lt. Connell, who could have spoken about their understanding of expectations or the reasonableness of said expectations, and the selection of those interviewed did not consider anyone above Capt. Cross' rank, who also could have confirmed the reasonableness of Capt. Cross' expectations, including Major Klumpp, Deputy Chief Haltom and Chief Wheeles—all of whom had reviewed and approved the PIP and special evaluation of which Lt. Connell complained. Likewise, Guerrero-Chavez did not interview anyone else who had recently supervised Lt. Connell. She only interviewed individuals who could provide some support for Lt. Connell and her claims.

Similarly, despite Guerrero-Chavez's contention that her thorough review of submitted documentation from Capt. Cross and Lt. Connell caused the investigation timeline delays, the report only attached or referenced documentation provided by Lt. Connell. This was despite the fact that Capt. Cross submitted email documentation that directly negated claims made by both Lt. Connell and Lt. M. Capt. Cross provided emails to Guerrero-Chavez which clearly outlined the Blue Team expectations, as well as the expectations within the 520 plan itself, and neither of these

supported Lt. Connell's statement on what the expectations were.[3] Second Amended Complaint (Doc. #34), ¶ 33. Lt. Connell's statement was false and had been corrected and addressed in writing on more than one occasion. Lt. Connell also asserted that despite meeting with her and agreeing to changes in her evaluation presented on October 23, 2022, Capt. Cross never made the agreed upon changes. Lt. Connell submitted documentation of her initial evaluation, as well as the hand-made changes from the meeting. Lt. Connell failed to submit the evaluation provided to her by email on October 24, 2023, that contained all the discussed changes. Guerrero-Chavez included both copies of the evaluation as supporting evidence in her report but failed to include the amended evaluation and did not bother to confirm with HR that the amended version was, in fact, the one in the Compass evaluation system.

    Lt. M. was aware of Lt. Connell's many mistakes, evidenced by emails which Capt. Cross provided detailing her mistakes dating back to September of 2021. In June of 2022, the entire graduating class of the TPD did not have uniforms due to the failure of Lt. Connell (then Sgt. Connell) to order them. Capt. Cross also provided text messages to Guerrero-Chavez from February of 2022 (prior to Lt. Connell's promotion) that Capt. Cross communicated missing items and errors to Lt. M. who responded back that Lt. Connell was "starting to piss" him off due to repeated mistakes. This directly contradicted Lt. M's claims regarding Lt. Connell's exemplary work product and his lack of knowledge about other incidents. He further claimed that Capt. Cross told him that TPD only promoted her because of the lawsuit, despite his assertion that this conversation occurred in conjunction with Capt. Cross' demand for Lt. Connell to be written up, which occurred in June of 2022, six months before Capt. Cross filed her litigation in

---

[3] The Second Amended Complaint (Doc. #34) does not explain "Blue Team" or "520 plan."

January of 2023.

The extended duration of this investigation, coupled with the fallout created from only interviewing subordinate employees, as well as errant substantiation and Capt. Cross' apparent lack of authority to enforce the City of Topeka's policies, has created a hostile work environment and an inability for Capt. Cross to do her job on a daily basis.  As a result, Capt. Cross, Captain J. and Major Klumpp communicated several times regarding difficulties from the supervisory disconnect, as well as the rumors circulating about her and the way other officers addressed her. Capt. Cross also communicated to Major Klumpp her concerns that she was incapable of completing her job without further clarification, because she was acting directly in accordance with policy, but TPD told her that her conduct was inappropriate.

The actions of Guerrero-Chavez, Lt. Connell and Lt. M. violate several personnel codes as well as TPD policies, but none of these officers have filed a lawsuit against the City of Topeka and thus TPD has not disciplined them for these violations—unlike Capt. Cross who committed no violations of policy.  Capt. Cross believes that within the course of this investigation Lt. Connell and Lt. M. provided false statements and claims to substantiate the grievance against Capt. Cross. Not only does this violate City Personnel Code, but it raises veracity concerns from police commanders who provide false information in an official investigation.  The City of Topeka is aware of this allegation and has not investigated the violations or issued any discipline.

In addition, Deputy Chief Haltom and Chief Wheeles decided to actively step aside and not review this information.  This has not been Capt. Cross' experience in the past.  Deputy Chief Haltom and Chief Wheeles involved themselves with subordinate grievance and discipline matters. For instance, in December of 2023, Captain J. sent an email to all patrol supervisors and lieutenants directing them to provide notifications to a commander when an incident occurred during their

shift.  This directive directly contradicted previous directives.

All the information clearly shows that Capt. Cross did not violate policy or bully Lt. Connell.  The inaction of the TPD leadership, which is intentionally blind to the facts that Capt. Cross and others presented to them which they personally reviewed and approved, clearly raises the issue of TPD treating Capt. Cross differently and retaliating against her for her lawsuit against the City of Topeka and Chief Wheeles individually.  Unlike other officers who did not have lawsuits against the City, Capt. Cross' chain of command has not supported her.

Following the conclusion of these investigations, Capt. Cross' bureau has made bureau-wide decisions without her input and has conducted meetings without her, including, as an example, when TPD assigned Capt. Cross a very undesirable job assignment and gave her no input during the "commander decision making" process.  Later, she requested a command meeting to discuss the ongoing issues, but TPD ignored her and never scheduled a meeting.  Capt. Cross ultimately went to Captain A. J. and asked him to suggest the meeting so that it would happen.  He did, and TPD scheduled a meeting just a few hours later.  Capt. Cross then spoke to the commander about feeling dismissed, but he took no actions.  Capt. A.J. had not filed a lawsuit against The City of Topeka.  Capt. Cross' bureau has placed decision information out to the department without informing Capt. Cross, who is responsible for communicating and implementing such decisions.  In addition, some of the decisions put forth to the bureau have been contrary to directives Capt. Cross previously made, thus undermining her authority within the bureau.  The efforts by the City of Topeka to undermine Capt. Cross' authority have created an environment in which Capt. Cross' subordinate sergeants feel empowered to challenge her expectations as unreasonable.  As a result, Capt. Cross has faced instances in which her subordinates have mocked her directives to her face.  In a recent training session that Capt. Cross directed, one of her duties was to ensure the officers

were appropriately dressed for training.  Capt. Cross previously had to send someone home at lunch to change into appropriate attire because the officers ignored her directive to comply with the dress code.  Now she will get flippant comments about her directives, such as "hey, where is your tuxedo."  This does not happen to other commanders who have not filed lawsuits against the City of Topeka.

In addition, TPD has given Capt. Cross unclear instruction on how to direct her female lieutenant.  TPD allows Capt. Cross' one female lieutenant to circumvent the chain of command to report directly to Major Klumpp, while all of Capt. Cross' male lieutenants continue to report to her directly.  This selective chain of command did not occur until after Capt. Cross filed her prior lawsuit.  This decision by command staff has negatively impacted Capt. Cross' reputation and authority by creating a chilled effect on directives she gives to her subordinates.  This did not happen to Capt. Cross before she filed her lawsuit against the City of Topeka.  Capt. Cross has reached out to her supervisor, Major Klumpp, to inform him of this.  He did not address Capt. Cross' concerns, and he required Capt. Cross to contact HR to reiterate her concerns.  At that time, Capt. Cross further informed HR that the efforts within her bureau continue to undermine her position and credibility with those in her command.

Within 300 days of the acts complained of, Capt. Cross filed a charge of discrimination with the Equal Employment Opportunity Commission.  She filed her original complaint within 90 days after the EEOC issued its Right to Sue letter.

## **Analysis**

Plaintiff alleges that in violation of Title VII, defendant retaliated against her for engaging in protected activity.  Defendant asks the Court to dismiss plaintiff's retaliation claim, arguing that plaintiff has failed to state a claim upon which relief can be granted.

To state a prima facie case of retaliation, plaintiff must allege that (1) she engaged in protected opposition to discrimination; (2) she suffered adverse employment action which would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection exists between her protected activity and the adverse action. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); Fassbender v. Correct Care Sols., LLC, 890 F.3d 875, 890 (10th Cir. 2018).

Defendant concedes that plaintiff's previous lawsuit constitutes protected activity. Defendant argues, however, that plaintiff has not plausibly alleged that she suffered adverse employment action or a causal connection between the protected activity and the alleged adverse employment action.

I.      Whether Plaintiff Has Plausibly Alleged Adverse Action

Defendant argues that plaintiff has not plausibly alleged that she suffered adverse employment action following her protected activity. Plaintiff responds that to show adverse employment action, she needs only to allege disadvantageous changes to her employment terms, which she has done.

In Muldrow v. City of St. Louis, 601 U.S. 346 (2024), the Supreme Court distinguished adverse employment action in the context of Title VII discrimination claims and adverse employment action in the context of Title VII retaliation claims. Though Muldrow lowered the bar for adverse employment action in discrimination cases, it reaffirmed that in retaliation cases, plaintiffs must still show that the retaliatory action caused a "significant" harm, i.e. the employer took action serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination. Id.; White, 548 U.S. at 68. The Supreme Court drew this distinction based on the purpose behind the two statutory provisions. Muldrow, 601 U.S. at 357. The purpose behind

Title VII's anti-retaliation provision was to capture employer actions "serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination," and if an action caused less serious harm, it would not deter Title VII enforcement and thus fell outside the purposes of the ban on retaliation. Id. Accordingly, to survive a motion to dismiss, plaintiff must plausibly allege that she suffered adverse employment action which would dissuade a reasonable worker from making or supporting a charge of discrimination. White, 548 U.S. at 68.

Plaintiff's response incorrectly applies Muldrow to her Title VII retaliation claim. Under Muldrow, plaintiff must allege that the retaliatory action caused a significant harm, i.e. the employer took action serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination.

Plaintiff alleges that procedural irregularities in the investigation of the complaint against her led to disadvantageous employment conditions that collectively created a hostile work environment. These conditions are (1) the ban on her right to record the interviews, (2) interview selections that were biased against her and (3) repeated delays of the investigation, prolonging its adverse impact and bias. Plaintiff also alleges that, in formally finding policy violations, the coaching session which resulted from the investigation damaged her professional standing, and that TPD then excluded her from bureau-wide decision-making meetings, made decisions without her input and assigned her an undesirable job.

Individually, not all of these facts imposed a significant harm to plaintiff or had a direct action bearing on her future employment. See Dick v. Phone Directories Co., Inc., 397 F.3d 1256, 1270 (10th Cir. 2005) (formal write-up not adverse employment action where plaintiff did not establish that it had bearing on likelihood of being fired). For example, preventing plaintiff from recording interviews would not necessarily dissuade a reasonable worker from engaging in

protected activity. On the other hand, the prospect of a protracted, unfair investigation, coupled with an unjust conclusion, marginalization and exclusion from district-wide meetings could constitute such harm. Plaintiff alleges that the TPD issued new directives which contradicted her, undermined her authority, allowed her subordinates to disrespect her directives and authority, disrupted the chain of command, made bureau-wide decisions without her input and generally undermined her reputation and credibility.

Retaliation analysis must account for the specific context of the action, as "the real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships." Burlington Northern, 548 U.S. 53 at 69. Here, the relevant context includes the authority structure of the police department and the need for a police captain to be able to give effective orders to subordinates. In that context, it is entirely plausible that a reasonable police officer would be dissuaded from making a charge of discrimination if she anticipated that the police department would retaliate by conducting a protracted unfair investigation and undermining her authority within the chain of command. These conditions, taken together, plausibly allege adverse action.

Plaintiff also alleges that defendant "assigned [plaintiff] an undesirable job." Second Amended Complaint (Doc. #34), ¶ 43. For purposes of a Title VII retaliation claim, a significant change in employment status, such as reassignment with significantly different job responsibilities, may be adverse action. Stinnett v. Safeway, Inc., 337 F.3d 1213, 1217 (10th Cir.2003) ("hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" are significant changes in employment status).[4] Plaintiff

---

[4] Plaintiff did experience a major employment status change after her protected activity: TPD promoted her to Captain.

does not allege, however, that standing alone, the allegedly undesirable job constituted a significant change in employment status. The Supreme Court has held that "reassignment of job duties is not automatically actionable." Burlington Northern, 126 S.Ct. at 2417. Plaintiff fails to allege why this job assignment would be adverse action, or any facts about it except her subjective impression that it was undesirable. See McGowan v. City of Eufala, 472 F.3d 736, 743 (10th Cir. 2006).

In summary, some of plaintiff's facts, standing alone, might not be considered adverse action. Plaintiff's evidence that the TPD conducted an unfair investigation and undermined her authority within the chain of command states a plausible claim of adverse employment action, however, so defendant's motion to dismiss on this issue is overruled.

**II.     Whether Plaintiff Has Plausibly Alleged Causal Connection**

Defendant argues that plaintiff has not plausibly alleged a causal connection between protected activity and adverse action. Plaintiff responds that the temporal proximity of the depositions in her previous action and the alleged behavior supports an inference of retaliatory intent.

Plaintiff may show a causal connection by alleging "circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982). Generally, "if the adverse action occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference." Conroy v. Vilsack, 707 F.3d 1163, 1181 (10th Cir. 2013).

Plaintiff has alleged that depositions for her previous lawsuit took place immediately before the investigation against her, with Chief Wheeles' deposition on September 5, 2023, and

-17-

Assistant Chief Haltom's deposition on October 11, 2023.  The investigation against plaintiff started in October of 2023, plaintiff's first interview for the investigation took place on November 15, 2023, and the investigation concluded on January 30, 2024.  The alleged conduct started within one month of the depositions and continued from there.  Plaintiff has therefore plausibly alleged a causal connection between her protected activity and defendant's conduct.

Accordingly, the Court overrules defendant's motion to dismiss plaintiff's second amended complaint.

**IT IS THEREFORE ORDERED** that defendant <u>City of Topeka, Kansas' Motion To Dismiss Plaintiff's Second Amended Complaint</u> (Doc. #35) filed August 11, 2025 is **OVERRULED.**

Dated this 27th day of October, 2025 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge