IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JENNIFER CROSS,                          )
                                         )
                    Plaintiff,           )          CIVIL ACTION
                                         )
v.                                       )          No. 24-4092-KHV
                                         )
CITY OF TOPEKA, KANSAS,                  )
                                         )
                    Defendant.           )
_____  )

## MEMORANDUM AND ORDER

On September 13, 2024, Jennifer Cross filed suit against her employer, the City of Topeka, Kansas, alleging that in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Fourteenth Amendment to the Constitution of the United States under 42 U.S.C. § 1983, defendant subjected her to a hostile work environment (Count I), disparate treatment on the basis of sex (Count II) and retaliation (Count III). On June 11, 2025, the Court sustained defendant's motion to dismiss Counts I and II, because plaintiff had already litigated those claims in Stuart et al. v. City of Topeka et al., No. 23-2021-JWB, 2024 WL 3741405 (D. Kan. Aug. 9, 2024). See Order (Doc. #30). On July 21, 2025, plaintiff filed her Second Amended Complaint (Doc. #34) alleging retaliation in violation of Title VII. This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #86) filed March 2, 2026. For reasons stated below, the Court overrules defendant's motion.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment.  Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018).  The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative.  Liberty Lobby, 477 U.S. at 250–51.  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251–52.

## Factual Background

The following facts are either uncontroverted, deemed admitted or, where disputed, construed in the light most favorable to plaintiff, the non-movant.

On March 29, 2004, Jennifer Cross started her employment as a police officer with the City

of Topeka, Kansas.  On January 18, 2023, Cross filed a complaint in federal court alleging that the City of Topeka and Police Chief Bryan Wheeles subjected her and two co-workers to a hostile work environment, disparate treatment on the basis of sex and retaliation.  In that action, the Court dismissed her claims on summary judgment, but the other plaintiffs survived summary judgment and prevailed at trial.  See Colleen Stuart, et al. v. City of Topeka, KS, et al., No. 23-2021-JWB, 2024 WL 3741404 (D. Kan. Aug. 9, 2024).  That action is pending in the Tenth Circuit Court of Appeals.

On February 23, 2023, after plaintiff filed her lawsuit, the Topeka Police Department ("TPD") offered her a promotion to the position of Captain.  Wheeles called plaintiff to his office and handed her a sealed envelope which he expected for her to open later.  Except for Jana Harden, also a plaintiff in the Stuart lawsuit, Wheeles did not offer any other person a promotion in a similar manner.  Likewise, during plaintiff's promotional ceremony, Wheeles spoke in a manner which suggested to those attending that he did not believe that plaintiff deserved the promotion.  Wheeles blatantly ignored plaintiff and excluded her from conversations with other employees.  Shortly after her promotion, Wheeles assigned plaintiff to be dispatch liaison, which she viewed as an undesirable assignment.

Once promoted, plaintiff was not satisfied with the performance of Lieutenant Kerry Connell, who reported directly to plaintiff.  Plaintiff discussed her concerns with her superiors, Major Russell Klumpp, Deputy Chief Jamey Haltom, Chief Wheeles and Human Resources ("HR") Interim Director Shawn Maisberger and asked to put Connell on a Performance Improvement Plan ("PIP").  They all approved the PIP and on October 23, 2023, placed Connell on a PIP.

In plaintiff's initial lawsuit, her counsel took the depositions of Chief Wheeles on

September 9, 2023, and Deputy Chief Haltom on October 11, 2023.  On November 9, 2023, Alicia Guerrero-Chavez, an investigator in the legal department of the City of Topeka, notified plaintiff that Connell had filed an internal complaint which asserted that plaintiff had bullied Connell. Connell claimed that plaintiff (1) set unattainable expectations, (2) complained loudly to a Major that Connell was inept and only promoted because plaintiff had filed a lawsuit and (3) discussed her own mental health struggles with Connell and directed Connell to seek treatment.

Before meeting with Guerrero-Chavez, plaintiff asked to have counsel present and to record the interview.  Guerrero-Chavez denied plaintiff's request to record and initially denied her request to have counsel present.  Guerrero-Chavez told plaintiff that her practice was to disallow recording unless required by a union contract.  On November 15, 2023, although plaintiff's attorney was unavailable, she met with Guerrero-Chavez.  Plaintiff explained that she would record the meeting because the HR Director had informed her that recording was not against policy. Guerrero-Chavez became irritated and appeared annoyed.  Guerrero-Chavez told plaintiff that she could not record the meeting and that the meeting would be rescheduled.

On November 21, 2023, with plaintiff's counsel present, Guerrero-Chavez interviewed plaintiff.  Even though City and TPD policy does not prohibit recording, Guerrero-Chavez again denied plaintiff's request to record the interview.  During the interview, Guerrero-Chavez was angry, rude, accusatory and adversarial in tone.

On January 30, 2024, some 78 days after Connell filed her complaint, Guerrero-Chavez provided plaintiff with her findings.  Guerrero-Chavez determined that plaintiff had bullied Connell, which violated the City Personnel Manual and the TPD Policy and Procedure Manual. The next day, based on Guerrero-Chavez's findings, Klumpp conducted a coaching session with plaintiff and documented it.  Even though Interim HR Director Shawn Maisberger and plaintiff's

superiors did not consider coaching to be a disciplinary action, plaintiff viewed the coaching session as discipline.

Later that same day, on January 31, 2024, plaintiff grieved Guerrero-Chavez's findings to her chain of command for review. Plaintiff noted that the expectations she sets for lieutenants mirror the expectations outlined in TPD policy. Plaintiff further noted that identifying areas in which a subordinate needs improvement cannot categorically be labeled as bullying. Guerrero-Chavez did not find that plaintiff acted with ill intent in interactions with Connell. Klumpp believed that plaintiff's concerns were "worthy of consideration" and "raise[d] the question of possible misunderstandings, misinterpretations and/or subjective interpretation." Because the investigation took place outside the TPD, Klumpp noted he was not in a position to amend the investigative results. Klumpp testified that had he fully supported plaintiff in this instance, he would have been concerned that the TPD would retaliate against him because "[t]here is a constant [air] of possible retaliation from the Chief's office." Haltom indicated that he would not overturn the determination because he had no investigative role in the process or influence on the outcome. Wheeles concurred that there was sufficient evidence to support the findings and denied the grievance.

On February 26, 2024, Maisberger overturned the finding of workplace bullying. Maisberger concluded that plaintiff did not set unrealistic work targets or deadlines given that TPD policies and expectations are well established within the department. She sustained the finding of unprofessional conduct, explaining that as a member of management it was unprofessional for plaintiff to share her own personal medical information with Connell.

On March 4, 2024, plaintiff filed an internal complaint against Guerrero-Chavez, Connell and Munoz because (1) while the average investigation in 2023 took 20 days, Guerrero-Chavez's

investigation of Connell's complaint took 78 days, (2) aside from interviewing Connell and plaintiff in November of 2023, Guerrero-Chavez conducted no other interviews for over 6 weeks, (3) Guerrero-Chavez's witness selections skewed the outcome, as she interviewed 3 sergeants who reported to Connell and a lieutenant (Munoz) who had not supervised Connell for almost 2 years, (4) Guerrero-Chavez failed to interview any lieutenants who reported to plaintiff and could have spoken to the reasonableness of plaintiff's expectations, (5) Guerrero-Chavez neglected to interview captains and plaintiff's superiors, who could have spoken to the reasonableness of plaintiff's expectations and Connell's PIP and (6) Guerrero-Chavez's findings and statements made by Connell and Munoz were inconsistent with documents plaintiff provided to her during the investigation.

The next day, on March 5, 2024, the City placed Maisberger on involuntary administrative leave, which lasted for three months.  City Attorney Amanda Stanley declined to open an investigation into Connell and Munoz.  On March 8, 2024, plaintiff filed her EEOC charge.

During the investigation into Connell's complaint against plaintiff, Connell reported directly to Klumpp or Captain Aaron Jones, instead of to plaintiff.  It is common practice to separate a subordinate from their supervisor during the course of an investigation when the subordinate has filed a complaint against their supervisor.  Even after Maisberger overturned the finding of bullying, however, Connell continued to report to Klumpp or Jones.  Months later, in December 2024, Connell still reported to Klumpp.  Permitting Connell to bypass plaintiff undermined plaintiff's authority over her subordinates and created confusion throughout the entire bureau regarding chain of command.  This atypical arrangement affected plaintiff's supervision of the entire bureau and created daily problems for her.  On a weekly basis, subordinates and captains, including Jones and Jerry Monasmith, second-guessed and undermined her supervisory decisions.

In March 2025, all three male captains received first choice in assignments and lieutenants while plaintiff and her former co-plaintiffs received unwanted assignments. In June 2025, TPD reassigned plaintiff and her former co-plaintiffs from the patrol bureau to the support bureau. Plaintiff did not ask for or want this move. The support bureau has the largest responsibility but is lowest on the order of command.

Plaintiff began taking antidepressants in approximately August 2023, after filing her first lawsuit. In February 2024, due to stress and anxiety she experienced at work because she was constantly undermined and second-guessed, plaintiff began taking acute anti-anxiety medication and medication to help her sleep. Between February and July 2024, plaintiff took intermittent leave from work under the Family Medical Leave Act ("FMLA"). Generally, plaintiff took two days off every two weeks "to be able to breathe."

## Analysis

Where—as here—plaintiff seeks to establish a Title VII retaliation claim through indirect or circumstantial evidence, the Court applies the burden-shifting framework under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1064 (10th Cir. 2009). Once plaintiff has demonstrated a prima facie case, the burden shifts to defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." Meiners v. Univ. of Kan., 359 F.3d 1222, 1229 (10th Cir. 2004). If defendant articulates a legitimate reason for the action, then plaintiff must demonstrate that its asserted reasons are pretextual. Id.

Defendant argues that it is entitled to summary judgment because plaintiff has not established a prima facie case of retaliation for any specific adverse employment action or that defendant's stated reasons for each action are a pretext for unlawful retaliation. In doing so,

defendant identifies seven potential adverse employment actions: (1) the fact and the manner of defendant's investigation into Connell's complaint against plaintiff, (2) Klump's coaching of plaintiff about her conduct with Connell, (3) defendant's exclusion of plaintiff from bureau-wide meetings, (4) Jones's directive in December of 2023 about when a watch commander must call the on-duty commander, which was inconsistent with the TPD guide and contrary to expectations plaintiff set for her watch commanders, (5) after the investigation, the removal of plaintiff as Connell's supervisor caused confusion to Connell's subordinates about who they should report to on matters which should be raised to a supervisor above Connell, (6) defendant's removal of plaintiff as Connell's direct supervisor and (7) plaintiff's assignment as dispatch liaison. Memorandum In Support Of Defendant's Motion For Summary Judgment (Doc. #87) filed March 2, 2026 at 22–29.

In response, plaintiff does not argue that any specific action rose to the level of "adverse employment action" sufficient to maintain an independent claim of retaliation. Instead, plaintiff argues that the protracted, "unfair investigation, coupled with an unjust conclusion undermining her [chain of command] authority" constitutes adverse employment action. Plaintiff's Brief In Opposition To Defendant's Motion For Summary Judgment (Doc. #96) filed March 25, 2026 at 20 (quoting Memorandum And Order (Doc. #41) filed October 27, 2025 at 16). Likewise, in the Pretrial Order (Doc. #85), plaintiff alleges that "[a]ll of the above retaliatory incidents, taken together, led to disadvantageous employment conditions for Cross that collectively created a hostile work environment." Pretrial Order (Doc. #85) at 10; see id. at 3–4 (defendant engaged in "systemic effort of belittling her authority as Captain among command staff and to her direct subordinates" and "to undermine her ability to command her subordinate, a key job function of the Captain position"); see also Plaintiff's Objections To Defendant's Proposed Jury Instructions And

Verdict Form (Doc. #122) filed April 22, 2026 at 2–3 (referring to single "adverse action"); id. at 3–4 (objecting to defendant's proposed instruction which limits facts that plaintiff contends were "collectively adverse action").  In other words, plaintiff alleges a single claim of retaliation, i.e. that because she filed a lawsuit against the City in January of 2023 and took the depositions of Wheeles and Haltom in the fall of 2023, defendant engaged in retaliatory harassment.[1]

As noted above, defendant argues that plaintiff has not established a prima facie case of retaliation for any specific adverse employment action or that defendant's stated reasons for each action are a pretext for unlawful retaliation.

## I.    Prima Facie Case Of Retaliation

To establish a prima facie case of retaliation, plaintiff must demonstrate that (1) she engaged in protected opposition to discrimination, (2) she suffered adverse employment action which would dissuade a reasonable worker from making or supporting a charge of discrimination and (3) a causal connection exists between her protected activity and the adverse action.  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); Fassbender v. Correct Care Sols., LLC, 890 F.3d 875, 890 (10th Cir. 2018).

Defendant does not dispute that plaintiff engaged in protected activity by filing the initial

---

[1]    In parts of plaintiff's response to defendant's motion for summary judgment, she does not precisely state whether she asserts a single claim of retaliatory harassment or separate claims based on discrete adverse employment actions.  For example, plaintiff argues that she has presented evidence that defendant engaged in "four categories" of retaliatory conduct: (1) defendant conducted a procedurally-biased investigation designed to reach a predetermined outcome (including biased witness selection, disparate procedural treatment and extended duration without activity), (2) defendant weaponized investigation findings to cause ongoing professional harm, (3) one day after plaintiff filed a complaint that the investigation was biased and retaliatory, defendant placed Maisberger on administrative leave and (4) "Post-Vindication Conduct Proves the Investigation Was Pretextual."  Plaintiff's Brief In Opposition To Defendant's Motion For Summary Judgment (Doc. #96) at 22–27.  The first two "categories" are included in plaintiff's single claim of retaliatory harassment set forth above.  The third and fourth "categories" are evidence in support of that claim—they do not identify independently actionable conduct.

lawsuit in January of 2023 and taking the depositions of Wheeles and Haltom in the fall of 2023. Defendant argues, however, that plaintiff has not shown that she suffered adverse employment action or a causal connection between the protected activity and the alleged adverse employment action.

### A.       Adverse Employment Action

A plaintiff must show that the challenged action was materially adverse, i.e. it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. See Burlington N., 548 U.S. at 68. Retaliatory harassment, if sufficiently severe, may constitute adverse employment action for purposes of a retaliation claim. Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1264 (10th Cir. 1998). Acts that carry "a significant risk of humiliation [and] damage to reputation" may be considered adverse actions. Id. (citing Annett v. Univ. of Kan., 371 F.3d 1233, 1239 (10th Cir. 2004)). On the other hand, "[p]etty slights, minor annoyances, and simple lack of good manners" will not deter "a reasonable worker from making or supporting a charge of discrimination." McGowan v. City of Eufala, 472 F.3d 736, 742 (10th Cir. 2006). To survive summary judgment, plaintiff must demonstrate a genuine issue of material fact whether she suffered retaliatory harassment which would dissuade a reasonable worker from filing or continuing to litigate a claim of discrimination. Burlington N., 548 U.S. at 68.

Plaintiff claims that she suffered materially adverse employment action because defendant engaged in retaliatory harassment. In support, plaintiff has presented evidence that (1) the manner in which Wheeles announced her promotion was disrespectful and suggested that she did not deserve the promotion, (2) Wheeles blatantly ignored plaintiff and excluded her from conversations with other employees, (3) shortly after her promotion, Wheeles assigned plaintiff to be dispatch liaison, an undesirable assignment, (4) during the investigation of Connell's complaint,

Guerrero-Chavez did not allow plaintiff to record her interview, only interviewed employees who were biased against plaintiff and repeatedly delayed the investigation and (5) defendant created an atmosphere where plaintiff's supervisors, peers and subordinates, including Klumpp, Jones and Monasmith, ignored, second-guessed and undermined her supervisory decisions.

As the Court explained in ruling on defendant's motion to dismiss, the Court analyzes retaliation claims in the specific context of the alleged adverse action, as "the real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships." Burlington N., 548 U.S. at 69.  Here, the relevant context includes the authority structure of the police department and the need for a police captain to be able to give effective orders to subordinates.  In that context, it is entirely plausible that a reasonable police officer would be dissuaded from making a charge of discrimination if she anticipated that the police department would retaliate by disrespecting her in front of her peers, conducting a protracted unfair investigation, undermining her authority within the chain of command and giving her undesirable assignments.  For purposes of establishing a prima facie case, plaintiff has presented sufficient evidence that defendant's conduct, when considered in the aggregate, rises to the level of a materially adverse action.  The Court therefore overrules defendant's motion on this ground.

### B.    Causal Connection Between Protected Activity And Adverse Employment Action

Defendant argues that plaintiff cannot establish a causal connection between her protected activity and the alleged harassment of her.

A plaintiff may demonstrate a causal connection "by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Meiners v. Univ. of Kan., 359 F.3d 1222, 1231 (10th Cir. 2004).  However, unless the adverse action is "very closely connected in time to the protected activity," plaintiff must rely on additional

evidence beyond mere temporal proximity.  Id.; see also Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1204–05 (10th Cir. 2008) (pattern of retaliatory conduct may provide temporal proximity sufficient to preclude summary judgment).  A six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient.  Id.  Absent temporal proximity, "Title VII retaliation claims must be proved according to traditional principles of but-for causation" which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013).

Here, plaintiff's claim falls well within the three-month period which justifies an inference of temporal proximity.  See Allen v. Garden City Co-op, Inc., 651 F. Supp. 2d 1249, 1259 (D. Kan. 2009).  Just over one month after plaintiff filed the initial lawsuit which alleged sex discrimination, the TPD promoted plaintiff to Captain.  Chief Wheeles, however, announced her promotion in a disrespectful manner and suggested that she did not deserve the promotion.  Wheeles also blatantly ignored plaintiff and excluded her from conversations with other employees.  Shortly after her promotion, Wheeles assigned her to be dispatch liaison.  In addition, less than three months after plaintiff took the depositions of Wheeles and Haltom, during the investigation of Connell's complaint against plaintiff, Guerrero-Chavez did not allow plaintiff to record her interview, only interviewed employees who were biased against plaintiff and repeatedly delayed the investigation.  When the Interim HR Director overturned Guerrero-Chavez's finding that plaintiff bullied Connell, the City placed the Interim HR Director on involuntary administrative leave.  Finally Klumpp testified that had he fully supported plaintiff in her grievance of the investigative findings, he would have been concerned that the TPD would retaliate against him because of a "constant [air] of possible retaliation from the Chief's office."  For purposes of

establishing a prima facie case through temporal proximity, plaintiff has presented sufficient evidence of a causal connection between her protected activity and the alleged harassment.  The Court therefore overrules defendant's motion on this ground.

## II.    Whether Defendant's Stated Reasons Are Pretext For Retaliation

Because plaintiff has established a prima facie case, the burden shifts to defendant to provide legitimate, nondiscriminatory reasons for each of the alleged acts of retaliatory harassment.  Berry, 74 F.3d at 986.  While defendant has explained why it took certain actions, it has not offered non-retaliatory reasons for every alleged act of harassment.  For example, defendant does not explain why Wheeles treated plaintiff's promotion differently, refused to engage with her, excluded her from conversations with other employees and assigned her as dispatch liaison, an undesirable assignment.  To the extent that defendant has offered non-retaliatory reasons for certain actions such as the procedure for investigating Connell's complaint, plaintiff has presented evidence of a "constant [air] of possible retaliation from the Chief's office" which is sufficient to create a genuine issue of material fact whether defendant engaged in the challenged conduct because plaintiff engaged in protected activity.  The Court therefore overrules defendant's motion for summary judgment.

## III.    Collateral Estoppel

Defendant argues that because plaintiff relied on Wheeles' conduct at her promotional ceremony as evidence of sex discrimination and retaliation in her initial lawsuit, plaintiff is precluded from using the same conduct to prove her retaliatory harassment claim in this lawsuit.  As explained above, plaintiff does not assert an independent claim based on the conduct of Wheeles at the promotion ceremony.  To the extent defendant seeks to exclude evidence about such conduct, the Court will evaluate defendant's argument in the context of its pending motion

in limine.  See Defendant's Motion And Memorandum In Support Of Defendant's Motion In Limine (Doc. #107) filed April 13, 2026 at 3–4.

## IV.     Time-Barred Claims

Defendant argues that any claims or incidents asserted by plaintiff that pre-date May 12, 2023 are untimely, as they occurred more than 300 days before plaintiff filed her EEOC charge on March 8, 2024.  Plaintiff argues that the earlier acts were part of a continuous pattern of retaliatory harassment.  Claims of retaliatory harassment, like claims of hostile work environment, may span a period longer than 300 days under the continuing violation doctrine.  See Duncan v. Mgr., Dep't of Safety, City & Cnty. of Denver, 397 F.3d 1300, 1308 (10th Cir. 2005).  To the extent defendant seeks to exclude evidence of retaliation that pre-dates May 12, 2023, the Court will evaluate defendant's argument in the context of its pending motion in limine.  See Defendant's Motion And Memorandum In Support Of Defendant's Motion In Limine (Doc. #107) at 2–3.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #86) filed March 2, 2026 is **OVERRULED.**

Dated this 27th day of April, 2026 at Kansas City, Kansas.

/s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-14-